## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**KENNETH H. RAGER**                                                              **PLAINTIFF**

**v.**                                                              CIVIL ACTION NO. <u>1:23cv139HSO-BWR</u>

**FRANK KENDALL, SECRETARY OF**
**THE DEPARTMENT OF THE AIR**                                        **DEFENDANT**
**FORCE**

---

## COMPLAINT

---

The Plaintiff, KENNETH H. RAGER, files this his Complaint against Defendant, FRANK KENDALL,

Secretary of the Department of the Air Force, and alleges, by and through undersigned counsel, as follows:

### INTRODUCTION

1.    This case is for damages against the United States Air Force ("USAF"), by and through its Secretary,

    Frank Kendall, due to its failure to accommodate, failure to engage in the interactive process, and

    discriminatory termination of Plaintiff, Kenneth H. Rager.

2.    Plaintiff Rager is a deaf individual who has had his disability for the entirety of his life due to a

    genetic condition.  He requires an interpreter and the utilization of American Sign Language ("ASL")

    to communicate.

3.    Rather than accommodate Plaintiff's disability, the USAF set Plaintiff up for failure and refused to

    provide an accommodation or participate in the interactive process.

### PARTIES

4.    At all times relevant hereto, Kenneth Rager, was employed by the Department of the Air Force –

    Air Education and Training Command at the Stennis Building located on the Keesler Air Force

    Base, 4503 M Street in Biloxi, Mississippi 39530.

5.    Plaintiff Rager currently resides at 1054 McNeil Avenue in Mobile, Alabama and resided at this

    address at the time of this incident.

6.    Defendant, Frank Kendall, is the Secretary of the Department of the Air Force and is being sued only in his official capacity.

7.    As indicated above, Plaintiff Rager was working for the United States Air Force at the Keesler Air Force Base, 600 1st Street in Biloxi, Mississippi.

## JURISDICTION & VENUE

8.    This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 as this an action arising under the laws of the United States, specifically the Americans with Disabilities Act, 42 U.S.C. §§ 12101 et seq, and Section 501 and 504 of the Rehabilitation Act.

9.    This Court has jurisdiction over this action as Plaintiff Rager has received a final decision and determination from the U.S. Equal Employment Opportunity Commission and opted to file this litigation in the District Court within 90 days of receipt of the same.

10.   Venue in this District is appropriate pursuant to 28 U.S.C. §§ 1391(b) and 1391 (c) as Defendant has deliberate contacts in this District, including physical presence in the jurisdiction through Keesler Air Force Base, where the Plaintiff was employed and all incidents relevant hereto occurred.

11.   Additionally, venue is proper as the unlawful employment practice(s) of Defendant occurred in this judicial district; relevant employment records, policies, and procedures are maintained in this jurisdiction; and but for the unlawful employment practice(s) of Defendants, Plaintiff Rager would have obtained a permanent position working in this judicial district. See 42 U.S.C. § 2000e-5(f)(3).

## FACTS

12.   Plaintiff Rager is a deaf individual who utilizes American Sign Language ("ASL") to communicate.

13.   Plaintiff Rager was employed to a position as a Training Instructor (GS-1712-09) subject to a completion of a two-year probationary period, effective October 13, 2020.  Employment would take place with the 333 Training Squadron at the Keesler Air Force Base in Biloxi, Mississippi.

14.    This position required Plaintiff Rager to provide in-class instruction of computer systems to a class. He was required to report to Pedro Malachi, Curriculum Development Manager, Captain John Presswood, and Major Lane Kemp.

15.    Prior to employment, Plaintiff Rager notified both his supervisors and Human Resources Officer, Jimena Ballard, that he would require an accommodation of having an ASL interpreter present once he started his position.

16.    Upon employment, Plaintiff was required to complete a training program which consisted of three phases prior to certification. The first phase included an examination in which employees must obtain at least a 90% to achieve certification.

17.    Plaintiff Rager was also required to participate in an orientation which provided guidance and information regarding his new employment.

18.    Plaintiff Rager made multiple attempts to request a reasonable accommodation for both orientation and the training he was required to complete to his direct supervisor as well as human resources.

19.    Plaintiff was told that on-site interpreters were not available given the budget and that he would have to be "on-boarded" first so that he could make a formal request for this accommodation. Plaintiff expressed concern with the use of video remote interpreters given the internet connectivity issues in the building where the training was being held.

20.    In October of 2020, Supervisor Malachi issued a "Supervisor's New Checklist" which clearly noted that he was aware of the Plaintiff's need for an interpreter.

21.    Plaintiff continued to make requests for his accommodation which was needed to assist with his onboarding process.

22.    In November of 2020, Captain Presswood stated that it was clear that Plaintiff Rager was struggling in the training without an interpreter.

23.    Plaintiff made multiple attempts to request an on-site interpreter through a Computer/Electronic Accommodations Program ("CAP") as instructed by Ms. Ballard to no avail. Ultimately, Plaintiff

was told by Supervisor Malachi that he should cease these requests as they would not be approved and became angry when he learned the Plaintiff continued making these requests.

24.    Without another option, Plaintiff attempted to find a solution on his own and tried utilizing an app on his personal cellular device which provided access to video interpreters.  However, the quality and functionality of this was poor given the connectivity issues in the building he was working in.

25.    Plaintiff attempted to use Talk-to-Text services to attempt to understand the training to pass the examinations for certification.

26.    Alternatively, Plaintiff made another accommodation request to telework so that he could utilize the assistive technology he had at his home to work through the training.  This was denied.

27.    Plaintiff sought assistance from Kendra Shock, Disability Program Manager, who was unable to provide anything further, stating that Supervisor Malachi should provide the necessary accommodations.

28.    Plaintiff attempted to take the training and complete the examination four (4) times without success.

29.    The first two attempts were unsuccessful given that the Plaintiff had no accommodations in place – in-person, remote, or otherwise.

30.    It was not until February of 2021 that Plaintiff Rager, once again, reiterated his need for an on-site interpreter to Supervisor Malachi and it was finally provided.

31.    An on-site interpreter was provided in April-May 2021 and Plaintiff was given another attempt to pass this examination.  His test score jumped from a 40 and 72.5 to an 84.

32.    On June 23, 2021, Plaintiff Rager was issued a letter, terminating his employment, reasoning that his inability to obtain the minimum passing score rendered him unable to continue employment.

33.    All of Plaintiff's test scores were cumulatively considered when he was terminated – despite the fact he was denied a reasonable and functional accommodation during the training[1].

---

[1] Three attempts are permitted to pass this examination before termination from the program.  However, Plaintiff was forced to waste his initial attempts as Defendant refused to provide the necessary and reasonable accommodations.

## COUNT I: DISCRIMINATION AND DISCRIMINATORY DISCHARGE
## BASED ON DISABILITY AS PROVIDED BY
## THE AMERICANS WITH DISABILITIES ACT ("ADA"), 42 U.S.C. §§ 12101 et seq

34.    Plaintiff incorporates by reference herein the allegations contained in the foregoing paragraphs.

35.    At all times relevant hereto, Plaintiff was a qualified individual with a disability within the meaning of the ADA. Plaintiff has an actual disability, has a record of being disabled, and/or was perceived as having a disability by Defendant.

36.    Defendant was the employer of Plaintiff Rager.

37.    At all times relevant, Defendant was aware of Plaintiff Rager's disability, including at the time of interview, hiring, and training.

38.    Defendant was aware and informed of Plaintiff Rager's need for an accommodation due to his disability.

39.    Plaintiff Rager was qualified to perform the job for which he was hired with the reasonable accommodations in place.

40.    Plaintiff Rager could have performed the essential functions of his job and the training required for the job if Defendant had provided him with reasonable accommodations in a timely manner.

41.    As a result of Defendant's failure to provide reasonable accommodations or participate in the interactive process of finding an alternative accommodation, Plaintiff Rager was unable to successfully complete the training necessary for his employment and, therefore, was terminated from the job.

42.    As a direct and proximate result of Defendant's violation of 42 U.S.C. §§ 12101 et seq., Defendant failed to accommodate Plaintiff Rager's disability.

43.    As a direct and proximate result of Defendant's discriminatory practices, Plaintiff Rager has been deprived of economic and noneconomic benefits, including but not limited to, lost wages, pain and suffering, mental anguish, humiliation, embarrassment, and loss of fringe benefits.

44.    Defendant's conduct was willful and wanton and was designed to deprive Plaintiff Rager of his rights as guaranteed under 42 U.S.C. §§ 12101 et seq., thus entitled Plaintiff to an award of punitive damages.

## COUNT II: CLAIM FOR RETALIATION UNDER THE
## AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §§ 12101 et seq

45.    Plaintiff incorporates by reference herein the allegations contained in the foregoing paragraphs.

46.    Defendant retaliated against Plaintiff Rager by terminating him following his *repeated* requests for accommodations during the orientation process and training provided by Defendant.

47.    Plaintiff Rager engaged in conduct protected by the ADA when he requested accommodations and Defendant was aware of his need for accommodations prior to offering Plaintiff employment.

48.    Plaintiff Rager was subjected to adverse employment action after he requested reasonable accommodations to complete his training and pass the necessary examinations required for his employment.

49.    However, Plaintiff Rager was denied accommodations during orientation, training, and examination which resulted in his failure and, ultimately, his termination.

50.    As a direct and proximate result of Defendant's discrimination, Plaintiff has been deprived of economic and noneconomic benefits including, but not limited to, lost wages, expenses, pain and suffering, mental anguish, anxiety, humiliation, embarrassment, and loss of fringe benefits.

51.    Defendant's conduct was willful and wanton and was designed to deprive Plaintiff of his rights as guaranteed under 42 U.S.C. §§ 12101 et seq., thus entitling Plaintiff to an award of punitive damages.

## COUNT III: FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS
## UNDER THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §§ 12101 et seq

52.    Plaintiff incorporates by reference herein the allegations contained in the foregoing paragraphs.

53.    At all times relevant hereto, Plaintiff was a qualified individual with a disability within the meaning of the ADA. Plaintiff has an actual disability, has a record of being disabled, and/or was perceived as having a disability by Defendant.

54.    Defendant was aware of Plaintiff Rager's disability and need for accommodation at time of hire.

55.    Defendant failed to provide necessary accommodations for Plaintiff during both orientation and training in preparation for his employment.

56.    Defendant was aware of and informed of the need for an accommodation due to Plaintiff Rager's disability.

57.    Plaintiff Rager could have performed the essential functions of his job and the training required for the job if Defendant had provided him with reasonable accommodations in a timely manner.

58.    Defendant discriminated against Plaintiff Rager by failing to provide him with reasonable accommodations and failing to engage in the interactive process.

59.    As a result of Defendant's failure to provide reasonable accommodations, Plaintiff was unable to complete the training and assessments required to start his employment, his request for accommodation was completely ignored, and he was ultimately terminated.

60.    As a direct and proximate result of Defendant's violation of 42 U.S.C. §§ 12101 et seq., Defendant failed to accommodate Plaintiff's disability.

61.    As a direct and proximate result of Defendant 's discrimination, Plaintiff has been deprived of economic and noneconomic benefits including, but not limited to, lost wages, expenses, pain and suffering, mental anguish, anxiety, humiliation, embarrassment, and loss of fringe benefits.

62.    Defendant's conduct was willful and wanton and was designed to deprive Plaintiff of his rights as guaranteed under 42 U.S.C. §§ 12101 et seq., thus entitling the Plaintiff to an award of punitive damages.

## COUNT III: CLAIM FOR DISCRIMINATION AND DISCRIMINATORY DISCHARGE IN VIOLATION OF SECTION 501 AND 504 OF THE REHABILITATION ACT

63.    Plaintiff incorporates by reference herein the allegations contained in the foregoing paragraphs.

64.    Under the Rehabilitation Act of 1973 and its implementing regulations, federal agencies must "not discriminate on the basis of disability in regard to the hiring, advancement or discharge of employees,

employee compensation, job training, or other terms, conditions, and privileges of employment." 29 C.F.R. § 1614.203(b); see also 29 U.S.C. § 791(f).

65.    In 1978, Congress amended the Rehabilitation Act to explicitly provide a private right of action under § 501 that allows federal employees to pursue claims of discrimination. See *Prewitt v. United States Postal Serv.*, 662 F.2d 292 at 302 (5th Cir. 1981).

66.    Essentially, it was expected that the Federal Government would be the 'model employer' of people with disabilities and, to this end, the Rehabilitation Act imposes considerable affirmative obligations on federal employers, beyond the mandate not to discriminate against people with disabilities. 29 C.F.R. § 1614.203(c)

67.    The Rehabilitation Act makes clear that "[t]he standards used to determine whether Section 501 has been violated in a complaint alleging employment discrimination under this part shall be the standards applied under the [Americans with Disabilities Act, also known as the] ADA."15 29 C.F.R. § 1614.203(b); 29 U.S.C. § 791(f).

68.    At all times relevant hereto, Plaintiff was a qualified individual with a disability as contemplated by the Rehabilitation Act.  Plaintiff has an actual disability, has a record of being disabled, and/or was perceived as having a disability by Defendant.

69.    Plaintiff Rager was qualified for the position for which he was hired as evidenced by the Defendant's decision to employ him, provide him the necessary orientation and training, and provide him a salary and benefits.

70.    Defendant is the United States Air Force and, as such, is a part of the federal government.

71.    Plaintiff Rager was subjected to adverse employment action after he requested reasonable accommodations (which was ultimately refused/denied) to complete his training and pass the necessary examinations required for his employment.

72.    As a result of this adverse action, Plaintiff Rager was denied the benefits of his employment due to the discriminatory nature of his termination based on his disability.

73.     As a direct and proximate result of Defendant's violation of Sections 501 and 504 of the Rehabilitation Act, Defendant discriminated against the Plaintiff which resulted in a discriminatory termination from employment.

74.     As a direct and proximate result of Defendant 's discrimination, Plaintiff has been deprived of economic and noneconomic benefits including, but not limited to, lost wages, expenses, pain and suffering, mental anguish, anxiety, humiliation, embarrassment, and loss of fringe benefits.

75.     Defendant's conduct was willful and wanton and was designed to deprive Plaintiff of his rights as guaranteed under the Rehabilitation Act, thus entitling the Plaintiff to an award of punitive damages.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff Kenneth H. Rager demands judgment against Defendant as follows:

a.   Trial by jury as to all issues set forth in his Complaint;

b.   Reinstatement to position with necessary reasonable accommodations;

c.   Removal of any and all reprimands, disciplinary actions, or "do not hire" letters from Plaintiff's personnel file;

d.   An award to the Plaintiff for back pay, plus legal interest from the date of judgment until paid;

e.   An award of compensatory damages in an amount sufficient to compensate Plaintiff for lost wages, pain and suffering, mental anguish, humiliation, embarrassment, and loss of fringe benefits;

f.   An award of punitive damages;

g.   Pre- and/or post-judgment interest at the maximum allowable rates permitted by the law;

h.   Reasonable attorneys' fees and costs;

i.   All other equitable remedies available by law as the Court deems proper.

DATED: Jun 10, 2023

**Plaintiff, Kenneth H. Rager**
**By and Through His Counsel**
*/s/ Greta K. Martin*
Greta Kemp Martin (MSB# 103672)
Katherine Henderson (MSB# 104522)
DISABILITY RIGHTS MISSISSIPPI
5 Old River Place, Ste. 101
Jackson, Mississippi 39202
Tel. (601) 968-0600
Email: gmartin@drms.ms